## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MUSTAFA ALI,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:23-cv-00691** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **LAUREL HARRY**, *et al.*, | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Plaintiff Mustafa Ali initiated the above-captioned *pro se* action under 42 U.S.C. § 1983, [1] alleging constitutional violations by various prison officials, medical providers, and Pennsylvania Department of Corrections (DOC) employees. Ali attempts to assert multiple, unrelated causes of action against diverse defendants in a single complaint. Because many of his claims are deficient, the Court will dismiss his complaint in part and provide limited leave to amend such that his pleadings comport with the Federal Rules of Civil Procedure.

## I.   BACKGROUND

Ali's civil rights complaint is divided into approximately five different sections. He asserts the following: (1) alleged deliberate indifference to serious medical needs by defendants Dr. Stanish, physician's assistant Donald O'Brien, Dr.

---

[1] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

Baddick, Corrections Health Care Administrator Christine Houser, nurse Michelle Donovan, and Wellpath LLC concerning his diagnosis and treatment of Parsonage Turner Syndrome (Doc. No. 1 ¶¶ 16-106); (2) alleged unconstitutional conditions of confinement against defendant Corrections Facility Maintenance Manager C. Marhelko, (*id.* ¶¶ 124-41); (3) alleged First Amendment free-exercise and Religious Land Use and Institutionalized Persons Act (RLUIPA) violations by Secretary of the DOC Laurel Harry concerning religious feasts and prayer practices, (*id.* ¶¶ 142-85); (4) an alleged First Amendment free-exercise violation by defendants Chaplain Scott and dietary supervisor Mr. Connolly for failing to provide a proper Kosher diet, (*id.* ¶¶ 186-95); and (5) an alleged state-law negligence claim against unidentified "Crisis and Emergency Response Team" officials at SCI Mahanoy for losing or destroying personal property, (*id.* ¶¶ 196-210).

Ali's complaint is deficient in several respects. First, many of his allegations fail to state a claim for relief. Second, Ali attempts to join disparate and unrelated claims and defendants without a proper basis for joinder under the Federal Rules of Civil Procedure.

## II.    STANDARD OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," unrepresented prisoner complaints targeting governmental entities, officers, or employees. *See* 28 U.S.C. § 1915A(a). One basis for dismissal at the screening

stage is if the complaint "fails to state a claim upon which relief may be granted[.]" *Id.* § 1915A(b)(1). This language closely tracks Federal Rule of Civil Procedure 12(b)(6). Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6). *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (*per curiam*) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008). In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted). At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)). Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded. *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 681.

Because Ali proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). This is particularly true when the *pro se* litigant, like Ali, is incarcerated. *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

## III.   DISCUSSION

As stated above, Ali is attempting to assert multiple unrelated constitutional claims against a host of different prison officials and medical providers.  The focus of his complaint is alleged deliberate indifference to serious medical needs, so the Court will concentrate on that claim.

### A.   Eighth Amendment Medical Indifference

The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishments on prisoners.  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment" to incarcerated individuals.  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  To plausibly plead an Eighth Amendment claim of deliberate indifference regarding inadequate medical care, a plaintiff must allege (1) "a serious medical need," and (2) "acts or omissions by prison officials that indicate deliberate indifference to that need."  *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, and denial of reasonable requests for treatment resulting in unnecessary suffering or risk of injury. *See Durmer v. O'Carroll*, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting *Lanzaro*, 834 F.2d at 346). Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted). Claims sounding in mere medical negligence will not suffice. *Rouse*, 182 F.3d at 197.

Ali appears to target his medical indifference claims against Dr. Stanish, O'Brien, Dr. Baddick, Houser, Donovan, and Wellpath. He alleges that his shoulder, arm, and neck pain (caused by Parsonage Turner Syndrome) was improperly treated for over two years. However, his complaint fails to allege deliberate indifference by O'Brien, Houser, Donovan, and Dr. Baddick.

As to O'Brien, Ali alleges that O'Brien gave him a cortisone injection that was not effective. (Doc. No. 1 ¶ 30.) He then claims that O'Brien later offered him another cortisone injection, which Ali rejected. (*Id.* ¶ 31.) Ali avers that he requested an orthopedic consult, but O'Brien did not believe that Ali's pain was as severe as he was saying and would not recommend an orthopedic consult or MRI at that time (just another cortisone injection). (*Id.* ¶ 32.) These allegations reflect a

mere disagreement in a course of treatment, which does not rise to the level of an Eighth Amendment violation. *See Lanzaro*, 834 F.2d at 346; *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) ("Because 'mere disagreement as to the proper medical treatment' does not 'support a claim of an [E]ighth [A]mendment violation,' when medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." (internal citation omitted)).

As to Houser, Ali makes two allegations. He claims that Houser told him at some unspecified time that an orthopedic consult was not warranted, (Doc. No. 1 ¶ 28), and that she repeatedly told him to "sign up for sick call" or continue to "follow the current treatment plan" when he made complaints regarding arm and shoulder discomfort, (*id.* ¶ 66.) These allegations do not come close to reflecting "unnecessary and wanton infliction of pain" as is required for deliberate indifference, especially because Houser is a health care administrator, not a treating physician, and it is clear from the complaint that Ali was being treated by doctors and nurses at that time. Ali also alleges that Houser met with him to discuss an unrelated grievance and scheduled him for the "MD line," (*id.* ¶ 34), which actions reflect the opposite of deliberate indifference to medical needs.

Ali's allegations against Donovan are even more threadbare. He claims that Donovan informed him that he would not be having an MRI after a treating physician

told Ali that he would need to have an X-ray and physical therapy session before an MRI could be scheduled.  (*Id.* ¶ 43.)  He also claims that Donovan, like Houser, repeatedly told him to sign up for sick call or to follow the current treatment plan in response to Ali's complaints of shoulder, arm, and neck pain.  (*Id.* ¶ 66.)  These allegations simply do not rise to the level of plausibly stating a constitutional violation with respect to medical care.

As to Dr. Baddick, Ali asserts that he first saw him for treatment in October 2021.  (*Id.* ¶ 38.)  Ali contends that Dr. Baddick observed a decreased range of motion and told Ali that he was going to order an MRI and then—depending on the results—possibly schedule an orthopedic surgery consult.  (*Id.* ¶ 39.)  Ali's main complaint against Dr. Baddick appears to be that he did not order the MRI as promised.  (*Id.* ¶¶ 40-42.)  Ali was then treated by multiple different prison medical personnel and had to wait approximately six more months before obtaining an MRI. (*Id.* ¶¶ 43-50.)  These allegations against Dr. Baddick, at most, implicate medical negligence.  That is, it appears that Ali is claiming that Dr. Baddick should have ordered the MRI but failed to do so.  It is well settled, however, that claims sounding in mere medical negligence are inadequate to establish deliberate indifference.  *See Rouse*, 182 F.3d at 197.

Ali's allegations as to Dr. Stanish are sufficient to state a medical indifference claim.  Ali alleges that Dr. Stanish intentionally refused to provide Ali necessary

medical treatment for nonmedical reasons, such as Ali's previous lawsuit and the cost of off-site referrals.  (*See* Doc. No. 1 ¶¶ 21-24.)  Ali also states a plausible claim against Wellpath, alleging that this company instituted a practice or policy of delaying or refusing to provide necessary medical treatment to prisoners to lower costs and boost profits.  (*See id.* ¶¶ 86-106); *Natale*, 318 F.3d at 583-84.

The Court notes that, in one section of his complaint, Ali alleges that "Medical defendants" were aware of Ali's need for treatment and intentionally refused to provide it, delayed necessary medical treatment for nonmedical reasons, and persisted in inadequate treatment plans despite their known ineffectiveness.  (Doc. No. 1 ¶¶ 63-69.)  The problem with these allegations is twofold.  First, they do not specify a particular defendant and thus do not show personal involvement, a prerequisite for Section 1983 liability.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556. U.S. 662, 676 (2009).  Second, they simply state legal conclusions related to Eighth Amendment medical indifference claims, which "are not entitled to the assumption of truth" and may be disregarded.  *Connelly*, 809 F.3d at 787.  It is possible that Ali is attempting to summarize his preceding allegations, but—as explained above—Ali has not pled facts showing that most of the named defendants were deliberately indifferent to his serious medical needs.

Accordingly, the Eighth Amendment medical indifference claims against O'Brien, Houser, Donovan, and Dr. Baddick must be dismissed for failure to state a claim. Because it is possible that Ali could cure his pleading deficiencies, leave to amend will be provided.

**B.     State-Law Negligence Claims**

In a different section of his complaint, Ali alleges that unidentified prison officials (the "CERT team") conducted an institutional search and damaged or lost some of his personal property. Ali brings a state-law negligence claim against them. This claim, however, is unrelated to any Section 1983 claim or defendant, and therefore the Court lacks jurisdiction to entertain it. Specifically, there is no supplemental jurisdiction under 28 U.S.C. § 1367 because the claim is not "so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). Consequently, Ali's state-law negligence claim must be dismissed for lack of subject matter jurisdiction.

**C.     Other Claims**

As noted above, Ali includes an unrelated Eighth Amendment conditions-of-confinement claim against Marhelko, an unrelated First Amendment free-exercise claim against Scott and Connolly, and unrelated First Amendment and RLUIPA claims against Harry. Ali cannot do so in a single complaint. These claims are not part of the "same transaction, occurrence, or series of transactions or occurrences"

underlying the instant medical indifference claims, nor is there a "question of law or fact common to all defendants" such that these claims and additional defendants could be permissively joined together in this action. *See* FED. R. CIV. P. 20(a)(2)(B).

Ali is free to file additional lawsuits based on these allegations, although the Court notes that each claim would require a separate Section 1983 lawsuit and Ali would be required to pay the filing fee for each case. *See id.*; *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (explaining that "[u]nrelated claims against different defendants belong in different suits" not only to prevent confusion but also to ensure that prisoners pay the required filing fees under the PLRA); *Redding v. Bilinski*, No. 3:15-cv-1047, 2015 WL 3710842, at *1-2 (M.D. Pa. June 12, 2015) (same).

### D.    Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile." *Grayson*, 293 F.3d at 114. As stated above, it is conceivable that Ali could amend his complaint to plausibly state Eighth Amendment medical indifference claims against some or all Defendants who are currently subject to dismissal.

If Ali chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings. The amended complaint should set forth Ali's

Eighth Amendment medical indifference claims in short, concise, and plain statements, and in sequentially numbered paragraphs (much like he did in his original complaint). Ali must address the pleading deficiencies identified in this Memorandum, and he must include all allegations within his pleading. He must also specify the offending actions taken by a particular defendant, sign the amended complaint, and indicate the nature of the relief sought. Ali may not include unrelated claims against different defendants in violation of Federal Rule of Civil Procedure 20(a)(2). Such claims require separate lawsuits, as explained in more detail above.

If Ali chooses not to amend, this case will proceed only as to his Eighth Amendment medical indifference claims against Dr. Stanish and Wellpath.

## IV.   CONCLUSION

Based on the foregoing, the Court will dismiss in part Ali's complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. Ali's state-law negligence claim will be dismissed for lack of subject matter jurisdiction. Limited leave to amend will be granted. An appropriate Order follows.

s/ Sylvia H. Rambo
United States District Judge

Dated: July 26, 2023