## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MUSTAFA ALI,** | : | **No. 1:23-CV-0691** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **DR. STANISH, _et al._,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Plaintiff Mustafa Ali initiated the above-captioned _pro se_ civil rights action under 42 U.S.C. § 1983.[1]  Ali alleges that prison medical providers violated his Eighth Amendment rights by exhibiting deliberate indifference to his serious medical needs.  Defendants move to dismiss Ali's claims or alternatively for summary judgment.  They contend that his complaint fails to state a claim for relief, is barred by the statute of limitations, and contains claims that were not properly exhausted through the administrative remedy system.  The court will grant Defendants' motion for summary judgment because Ali failed to exhaust his administrative remedies.

---

[1] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  _See Gonzaga Univ. v. Doe_, 536 U.S. 273, 284-85 (2002).

## I.   BACKGROUND

In his complaint, Ali asserted the following unrelated claims: (1) alleged deliberate indifference to serious medical needs by medical providers Dr. Stanish, Donald O'Brien, Dr. Baddick, Christine Houser, Michelle Donovan, and Wellpath LLC concerning his diagnosis and treatment of Parsonage Turner Syndrome, (Doc. 1 ¶¶ 16-106); (2) alleged unconstitutional conditions of confinement against Corrections Facility Maintenance Manager C. Marhelko, (id. ¶¶ 124-41); (3) alleged First Amendment free exercise and Religious Land Use and Institutionalized Persons Act (RLUIPA) violations by Secretary of the Department of Corrections Laurel Harry concerning religious feasts and prayer practices, (id. ¶¶ 142-85); (4) an alleged First Amendment free exercise violation by Chaplain Scott and dietary supervisor Mr. Connolly for failing to provide a proper Kosher diet, (id. ¶¶ 186-95); and (5) an alleged state-law negligence claim against unidentified "Crisis and Emergency Response Team" officials at SCI Mahanoy for losing or destroying personal property, (id. ¶¶ 196-210).

The court[2] screened Ali's complaint pursuant to 28 U.S.C. § 1915A(a).  It first held that Ali had plausibly stated an Eighth Amendment medical indifference claim against two of the six targeted medical Defendants: Dr. Stanish and Wellpath LLC.  (See Doc. 10 at 5-10).  The court then dismissed the state-law

---

[2] This case was previously assigned to the Honorable Sylvia H. Rambo.

negligence claims against the unidentified "CERT team," noting that such claims were unrelated to the Section 1983 claims and therefore the court lacked subject matter jurisdiction to entertain them.  (See id. at 10 (citing 28 U.S.C. § 1367(a)).  Finally, the court explained that Ali's other Section 1983 claims were unrelated to his medical indifference claims and targeted different Defendants, and therefore they violated the joinder rules provided by Federal Rule of Civil Procedure 20(a)(2)(B).  (See id. at 10-11).

In closing its July 26, 2023 decision, the court granted Ali limited leave to amend, giving him 21 days to file an amended complaint with respect to his Eighth Amendment medical indifference claims.  (See id. at 11-12; Doc. 11 ¶ 6).  His other unrelated claims, the court admonished, must be brought in separate civil rights lawsuits.  (See Doc. 10 at 10-11, 12).  The court further explained that if Ali did not timely file an amended complaint, his case would proceed "only as to his Eighth Amendment medical indifference claims against Dr. Stanish and Wellpath."  (Id. at 12).

On August 29, 2023, the court issued an order directing service on Dr. Stanish and Wellpath, explaining that the case would proceed against only those defendants because Ali had not filed an amended complaint.  (Doc. 13 at 1).  Following service, Dr. Stanish and Wellpath moved to dismiss Ali's complaint

3

pursuant to Federal Rule of Civil Procedure 12(b)(6) or alternatively for summary judgment.  (See Doc. 17; Doc. 18 at 15).

In their motion, Defendants raise—among other defenses—the affirmative defense of failure to exhaust administrative remedies.  (See Doc. 18 at 14-19). The court issued the requisite notice to Ali that it would act as a factfinder for the issue of administrative exhaustion and provided him additional time to respond to Defendants' motion.  (See Doc. 21).

The court also denied Defendants' motion to stay discovery, noting that discovery may be necessary with respect to the failure-to-exhaust defense.  (See id. ¶ 4).  The court[3] subsequently clarified that discovery would be limited to the issue of administrative exhaustion, as the other defenses raised by Defendants relied solely on the allegations in the complaint.  (See Doc. 26 & n.1); see also Small v. Camden Cnty., 728 F.3d 265, 271 n.5 (3d Cir. 2013) (noting that it "make[s] sense from an efficiency standpoint that exhaustion determinations be made before discovery, or with only limited discovery" and quoting Pavey v. Conley, 544 F.3d 739, 742 (7th Cir. 2008), for the proposition that "in the ordinary case discovery with respect to the merits should be deferred until the issue of exhaustion is resolved. If merits discovery is allowed to begin before that

---

[3] On November 7, 2023, this case was reassigned to the undersigned judicial officer.

4

resolution, the statutory goal of sparing federal courts the burden of prisoner litigation until and unless the prisoner has exhausted his administrative remedies will not be achieved.").

Following several extensions of time, Ali submitted his brief in opposition and supporting evidence. (See generally Doc. 31). Defendants timely filed a reply brief. (Doc. 32). Defendants' motion to dismiss or alternatively for summary judgment is now ripe for disposition.

## II.    STANDARDS OF REVIEW

### A.    Motion to Dismiss under FED. R. CIV. P. 12(b)(6)

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. See Phillips v. County of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008). In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. Mayer v. Belichick, 605 F.3d 223, 230

(3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry. See Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (internal citations, quotation marks, and footnote omitted). At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (alterations in original)). Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded. Id. (quoting Iqbal, 556 U.S. at 679). Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief." Id. (quoting Iqbal, 556 U.S. at 679). Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 681.

Because Ali proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted). This is particularly true when the *pro se*

6

litigant, like Ali, is incarcerated.  See Dooley v. Wetzel, 957 F.3d 366, 374 (3d

Cir. 2020) (citation omitted).

### B.    Motion for Summary Judgement[4]

"One of the principal purposes of the summary judgment rule is to isolate

and dispose of factually unsupported claims or defenses."  Celotex Corp. v.

Catrett, 477 U.S. 317, 323-24 (1986).  Summary judgment is appropriate where

"the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

Material facts are those "that could alter the outcome" of the litigation, and

"disputes are 'genuine' if evidence exists from which a rational person could

conclude that the position of the person with the burden of proof on the disputed

issue is correct."  EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 262 (3d Cir.

2010) (quoting Clark v. Modern Grp. Ltd., 9 F.3d 321, 326 (3d Cir. 1993)).

---

[4] The court provides its standard of review for summary judgment with respect to Defendants' claim of failure to exhaust administrative remedies.  The parties have been informed that the court will consider administrative exhaustion in its role as a factfinder.  (See Doc. 21).  The parties have also been provided additional time to supplement the record with relevant evidence or other supporting materials.  (See id.).  Consideration of evidence outside the pleadings moves this portion of Defendants' motion from motion-to-dismiss territory into that of summary judgment.  See FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").  Accordingly, Defendants' motion to dismiss with respect to administrative exhaustion is converted to a motion for summary judgment.  All other defenses raised by Defendants remain subject to the standard of review for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

At the Rule 56 stage, the court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor." Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014). This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving party on the claim or claims at issue. Liberty Lobby, 477 U.S. at 250-57; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). A "scintilla of evidence" supporting the nonmovant's position is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]." Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 192 (3d Cir. 2015) (quoting Liberty Lobby, 477 U.S. at 252) (alteration in original). Succinctly stated, summary judgment is "put up or shut up time" for the nonmoving party. Daubert v. NRA Grp., LLC, 861 F.3d 382, 391 (3d Cir. 2017) (quoting Berkeley Inv. Grp. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006)).

## III.   DISCUSSION

Defendants assert three defenses in their motion to dismiss: (1) failure to state a claim upon which relief may be granted; (2) failure to exhaust

8

administrative remedies; and (3) expiration of the statute of limitations.  The court

need not address Defendants' first argument.  It has already screened Ali's

complaint pursuant to Section 1915A(a) and determined that he plausibly stated

a claim for relief with respect to his Eighth Amendment claims against Dr. Stanish

and Wellpath.  (See Doc. 10 at 8-9).  There is no occasion to revisit this prior

decision, nor have Defendants provided any basis or argument for

reconsideration.  The court will thus consider Defendants' remaining two

defenses in turn.

### A.    Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e *et*

*seq.*, requires prisoners to exhaust available administrative remedies before

suing prison officials for alleged constitutional violations.  See id. § 1997e(a);

*Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available"

remedies must be exhausted).  Proper exhaustion is mandatory, even if the

inmate is seeking relief—like monetary damages—that cannot be granted by the

administrative system.  See Woodford v. Ngo, 548 U.S. 81, 85 (2006).  The

exhaustion process is governed by the contours of the prison grievance system

in effect where the inmate is incarcerated.  Jones v. Bock, 549 U.S. 199, 218

(2007); see also Woodford, 548 U.S. at 90-91.

Pennsylvania's Department of Corrections (DOC) employs a three-step grievance process that must be completed to properly exhaust administrative remedies in most cases.  See Booth v. Churner, 206 F.3d 289, 292 n.2 (3d Cir. 2002); COMMONWEALTH OF PA., DEP'T OF CORR., INMATE GRIEVANCE SYS., Policy No. DC-ADM 804 (May 1, 2015) (hereinafter "DC-ADM 804").  If informal resolution attempts do not resolve the problem, the first step is to file a written grievance (using form DC-804, Part 1) with the Facility Grievance Coordinator within 15 working days after "the event upon which the claim is based."  DC-ADM 804 § 1(A)(3)-(5), (8).  An adverse decision by the grievance coordinator may be appealed to the Facility Manager within 15 working days of the initial-review response or rejection.  Id. § 2(A)(1).  Finally, an adverse decision by the Facility Manager may be appealed to "Final Review" with the Secretary's Office of Inmate Grievances and Appeals (SOIGA), and again must be submitted within 15 working days of the date of the Facility Manager's decision.  Id. § 2(B)(1).

The DOC has specific requirements for grievances submitted by inmates. Those requirements include, among other things, that the grievance "be legible [and] understandable"; "include a statement of the facts relevant to the claim" as well as "the date, approximate time, and location of the event(s) that gave rise to the grievance"; that the prisoner "identify individuals directly involved in the event(s)"; and that the grievance sets forth "the specific relief sought," including

"compensation or other legal relief normally available from a court." Id. §
1(A)(11).

Defendants maintain that Ali only filed and exhausted one relevant

grievance regarding inadequate medical care—grievance number 949398—in

October 2021, approximately two years after his allegedly deficient treatment by

Dr. Stanish. (See Doc. 18 at 15). They further argue that this grievance does

not request monetary relief and "does not mention Wellpath." (Id.)

Ali counters these arguments by claiming that he submitted an earlier

grievance dated February 13, 2020, in which he complained about Dr. Stanish's

refusal to treat his pain and the intentional delay in treatment. (See generally

Doc. 31-4). That grievance additionally complains about Wellpath (formerly

"Correct Care Solutions"[5]), alleging that Wellpath had a "statewide custom/policy

to deny inmates necessary medical treatment in order to save money and

maximize profits." (Id. at 2). The grievance requests injunctive relief in the form

of additional medical care and "monetary compensation" in the amount of

"$500,000." (Id.)

---

[5] See Wilson v. Pa. Dep't of Corr., No. 1:21-CV-2136, 2023 WL 424268, at *3 n.1 (M.D. Pa. Jan.
26, 2023) (Conner, J.) (taking judicial notice that Correct Care Solutions is "now known as
Wellpath pursuant to a 2018 corporate merger with Correctional Medical Group" (citations
omitted)).

There is no dispute that this February 13, 2020 grievance was not appealed to the Facility Manager or to final review with the SOIGA.  Ali argues that prison officials made the grievance process "unavailable" insofar as they did not respond to this grievance or answer his later requests for tracking information or status updates.  (See Doc. 31 at 8-9; Doc. 31-5; Doc. 31-6; Doc. 31-7).

The insurmountable problem for Ali is that there is no proof that he ever filed this February 13, 2020 grievance.  The grievance form to which Ali cites does not contain a grievance number (which ordinarily would be supplied by DOC officials upon receipt), a signature of the Facility Grievance Coordinator indicating that the "grievance has been received and will be processed in accordance with DC-ADM 804," or a date of receipt by the Facility Grievance Coordinator.  (See Doc. 31-4 at 1; Doc. 32-3 ¶¶ 3-4 (affidavit of Jennifer Mahally, Grievance Coordinator at SCI Retreat and, subsequently, SCI Mahanoy)).  In other words, while Ali has provided evidence that he drafted this grievance on February 13, 2020, there is no evidence that he ever *filed* it.

Ali contends that he was transferred from SCI Retreat to SCI Mahanoy before he received his copy of the grievance with the grievance tracking number.  (See Doc. 31 at 8-9).  He asserts that he wrote to the Facility Grievance Coordinator at SCI Retreat (Jennifer Mahally) in March 2020, inquiring about the tracking number.  (See id. at 9; Doc. 31-5; Doc. 31-7).  Ali further alleges that he

received no response from Mahally, so he wrote to Kerri Moore, the DOC's Chief

Grievance Officer, in April 2020.  (See Doc. 31 at 9; Doc. 31-6; Doc. 31-7).  Ali

does not state whether he received a response from Moore regarding his April

2020 inquiry.  (See Doc. 31 at 9).

There are two fatal flaws with Ali's argument that administrative remedies

were unavailable to him and therefore administrative exhaustion is satisfied.

First, and most importantly, the court finds that the record evidence establishes

that Ali never *filed* the February 13, 2020 grievance.  As noted above, there is no

indication on the grievance itself that it was ever received or processed by the

Facility Grievance Coordinator.  No response was issued by the DOC, nor was

any appeal taken.  Moreover, Jennifer Mahally—who was the Grievance

Coordinator at SCI Retreat during the relevant time and later became the

Grievance Coordinator at SCI Mahanoy (where Ali was transferred)—has

provided an affidavit averring the following:

> I was given a copy of an alleged grievance filed by Mustafa Ali dated
> February 13, 2020.  I have no record of receiving this grievance.  If it
> had been filed, then a grievance number would have been placed on
> the grievance, it would be dated with the date of receipt and by whom.
> There is no such acknowledgement that the grievance was ever filed.
> [A] grievance is also recorded so we can keep track of it.  There is no
> recording of [this grievance].  I have no record . . . that the February
> 13, 2020 grievance was ever filed.

(Doc. 32-3 ¶¶ 2-5).  No countervailing evidence or affidavit has been submitted

by Ali.  Consequently, Defendants have established by a preponderance of the

evidence that the February 13 grievance was never filed and therefore Ali failed to exhaust his administrative remedies.  See Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal., 508 U.S. 602, 622 (1993) ("The burden of showing something by a 'preponderance of the evidence,' the most common standard in the civil law, 'simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [fact finder] of the fact's existence.'" (quoting In re Winship, 397 U.S. 358, 371-72 (1970) (Harlan, J., concurring)).

Because Ali did not properly file the February 13, 2020 grievance, his argument that the DOC defaulted by failing to respond to it or to provide an update about it, (see Doc. 31 at 8, 9 (citing Shifflett v. Korszniak, 934 F.3d 356 (3d Cir. 2019))), is unavailing.  Cf. Shifflett, 934 F.3d at 365 (requiring strict compliance by prison officials with time limits set forth in prison's own polices and holding that prison's untimely response to "a *properly submitted* grievance or appeal" rendered administrative remedies unavailable and exhaustion complete). To the contrary, the record is clear that Ali "knew of, and was able to access, [the DOC]'s grievance procedures," *Small*, 728 F.3d at 272, but Ali failed to properly file the February 13 grievance.  Hence, "administrative remedies were available to him," id., but he did not avail himself of them.

Second, even if Ali had filed the February 13, 2020 grievance as he contends, he would still face exhaustion problems with respect to Dr. Stanish. In his complaint, Ali alleges that his neck, shoulder, and arm problems began in October 2019 while at SCI Retreat. (Doc. 1 ¶ 16). He avers that he was seen in "November 2019" by Dr. Stanish, who told him that he would not receive any outside treatment (*e.g.*, an MRI or orthopedic consult) for his pain until he was transferred to a different prison and because he was "troublesome" for having filed a lawsuit against other SCI Retreat medical staff. (Id. ¶¶ 20-23). Defendants have confirmed through Ali's medical records that this visit with Dr. Stanish occurred on November 26, 2019. (See Doc. 32-1 at 6-7). Ali then recounts that he was transferred to SCI Mahanoy in "February 2020," presumably sometime after drafting the February 13 grievance. (Doc. 1 ¶ 25).

DC-ADM 804, however, requires that an inmate "submit a grievance to the Facility Grievance Coordinator/designee . . . within 15 working days after the event upon which the claim is based." DC-ADM 804 § 1(A)(8). Thus, if Ali believed that Dr. Stanish's refusal to provide treatment on November 26, 2019, violated the Eighth Amendment (as he now claims), he was required to grieve that issue within 15 working days of the event, *i.e.*, by December 17, 2019. It is thus clear from the Rule 56 record that even if the February 13, 2020 grievance

had been filed, it would have been patently untimely with respect to Ali's Eighth Amendment claims against Dr. Stanish.

Finally, Ali cites DC-ADM 804 and asserts that "if an inmate who has filed a grievance is transferred, paroled or released prior to the appeal process being completed[,] the inmate may continue to pursue the grievance or appeal by notifying the Facility Manager of the facility where the grievance was originally filed." (Doc. 31 at 9). Ali maintains that he followed these guidelines by writing to Mahally at SCI Retreat in March 2020 following his transfer to SCI Mahanoy. (See id.).

Ali appears to be referencing Section 2(B)(2)(j) of DC-ADM 804, which states, "If an inmate who has *filed* a grievance is transferred, paroled, or released prior to the appeal process being completed, the inmate may continue to pursue the grievance or appeal by notifying the Facility Manager of the facility where the grievance was originally *filed*." DC-ADM 804 § 2(B)(2)(j) (emphasis added). This argument puts the cart before the horse. As explained above, the record demonstrates that Ali did not file the February 13, 2020 grievance. Thus, DC-ADM 804 § 2(B)(2)(j) simply does not apply.

In sum, Ali has not established that administrative remedies were unavailable to him. Thus, his Eighth Amendment claims regarding his treatment in late 2019 at SCI Retreat required proper exhaustion through final review with

the SOIGA.  That exhaustion did not occur, so Ali procedurally defaulted his claims.  See Spruill v. Gillis, 372 F.3d 218, 230-31 (3d Cir. 2004).  Ali provides no valid excuse for his procedural default, as he has not shown that administrative remedies were unavailable.  Therefore, summary judgment must be granted in Dr. Stanish's favor due to failure to exhaust administrative remedies, as it is undisputed that Dr. Stanish had no further involvement with Ali's medical treatment after Ali's transfer to SCI Mahanoy in February 2020.

This leaves for discussion Ali's October 7, 2021 grievance—number 949398.  This grievance—as opposed to the February 13, 2020 grievance—is confirmed by the Facility Grievance Coordinator as being received on October 8, 2021, and it contains a tracking number supplied by the DOC.  (See Doc. 18-2 at 5).  Thus, it was properly filed.  Moreover, there is no dispute that Ali fully exhausted this grievance through final appeal with the SOIGA.  (See generally Doc. 18-2).

Defendants contend that this grievance has material deficiencies as well.  They assert that the grievance does not mention Wellpath and does not seek monetary relief.  (See Doc. 18 at 15).  Ali does not address grievance 949398 or respond to Defendants' arguments at all.

Upon review of grievance 949398 and its appeals, the court finds that Defendants are correct.  Nowhere in this grievance or its appeals does Ali

17

mention Wellpath or the unconstitutional policy described in his complaint.  (See generally Doc. 18-2).  Nor does Ali ever request monetary damages.  (See id.). In fact, his initial grievance specifically states that "[t]he requested relief is to be immediately evaluated by the medical director [or] by an outside medical provider." (Doc. 18-2 at 5).  Grievance 949398 also does not identify or mention Dr. Stanish, likely because Ali had been transferred to a different prison.  Ali references the "medical director" in grievance 949398, but Dr. Stanish was not the medical director at SCI Mahanoy where the events complained of occurred.

Thus, grievance 949398 is no help to Ali regarding exhaustion of his claims against Dr. Stanish or Wellpath.  Summary judgment, therefore, must likewise be granted in Wellpath's favor, as Ali failed to exhaust his unconstitutional policy claim against that entity.

**B.    Statute of Limitations**

Ali's Section 1983 claim against Dr. Stanish fails for an additional reason. It is clear from the face of his pleadings that his Eighth Amendment medical indifference claim is time-barred.

The statute of limitations for Section 1983 claims arising in Pennsylvania is two years.  See Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009); 42 PA. CONS. STAT. ANN. § 5524(2), (7).  For Section 1983 claims, that two-year period accrues (or begins to run) when the plaintiff "knew or should have known of the injury

upon which his action is based," Sameric Corp. of Del. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998) (citation omitted), and "the last act needed to complete the tort occurs," Nguyen v. Pennsylvania, 906 F.3d 271, 273 (3d Cir. 2018).

Here, the alleged unconstitutional conduct by Dr. Stanish occurred in November 2019.  There is no further treatment or mistreatment alleged by Ali in the complaint regarding his remaining two and a half months at SCI Retreat.[6] Thus, Ali's claim against Dr. Stanish accrued in November 2019 and must have been filed by November 2021.  Even assuming Dr. Stanish provided subsequent deficient medical care at SCI Retreat, such care definitively ended in February 2020, when Ali pleads that he was transferred to SCI Mahanoy.  Accordingly, the latest possible date of accrual is February 2020, which means that Ali's Section 1983 action needed to be filed—at the very latest—by February 2022.  Ali, however, did not file the instant lawsuit until April 2023, more than a year out of time.  (See Doc. 1 at 26, 27).

It is true that the statute of limitations is tolled while a prisoner exhausts administrative remedies.  See Wisniewski v. Fisher, 857 F.3d 152, 158 (3d Cir.

---

[6] In his opposition brief, Ali alleges that he was treated by Dr. Stanish "on subsequent occasions." (Doc. 31 at 4).  However, those allegations do not appear in his complaint, and it is well settled that a plaintiff cannot amend his pleadings through a brief in opposition to a motion to dismiss. Frederico v. Home Depot, 507 F.3d 188, 201-02 (3d Cir. 2007) (citing Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988)).

2017) (citing <u>Pearson v. Sec'y Dep't of Corr.</u>, 775 F.3d 598, 603 (3d Cir. 2015)).

Yet, as thoroughly explained above, Ali never filed the February 13, 2020

grievance against Dr. Stanish, so it did not toll the statute of limitations for Ali's

Eighth Amendment claim against him.

Ali argues that the "continuing violation" doctrine—a narrow, equitable

exception to the statute of limitations—applies to his claims.  (<u>See</u> Doc. 31 at 9-

10).  With respect to his Eighth Amendment claim against Dr. Stanish, however,

he is wrong.

The continuing violation doctrine provides that "when a defendant's conduct

is part of a continuing practice, an action is timely so long as the last act

evidencing the continuing practice falls within the limitations period; in such an

instance, the court will grant relief for the earlier related acts that would otherwise

be time barred."  <u>Cowell v. Palmer Twp.</u>, 263 F.3d 286, 292 (3d Cir. 2001)

(quoting <u>Brenner v. Loc. 514, United Bhd. of Carpenters & Joiners of Am.</u>, 927

F.2d 1283, 1295 (3d Cir. 1991)).  To benefit from the continuing violation

doctrine, the plaintiff "must establish that the defendant[s'] conduct is more than

the occurrence of isolated or sporadic acts."  <u>Id.</u> (citation and internal quotation

marks omitted).  As the Third Circuit has explained, the doctrine is intended for

causes of action that require acts to be aggregated to make out a claim, *i.e.*,

when the cumulative effect of those acts creates a cause of action (for example,

a hostile work environment discrimination claim).  See O'Connor v. City of

Newark, 440 F.3d 125, 127-28 (3d Cir. 2006) (citing Nat'l R.R. Passenger Corp.

v. Morgan, 536 U.S. 101, 113 (2002)).

Ali's claim against Dr. Stanish involves a discrete and isolated act.  He

alleges that, in November 2019, Dr. Stanish intentionally denied necessary

medical care based on retaliatory animus and a desire to save money.  In other

words, Ali alleges that Dr. Stanish denied him necessary medical treatment for

"non-medical reasons."  Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

Following that incident, Ali had a complete cause of action against Dr. Stanish for

a Section 1983 claim sounding in deliberate indifference to serious medical

needs.  Indeed, the existence of an actionable claim is further evidenced by the

institutional grievance Ali drafted but did not file.  Therefore, the continuing

violation doctrine does not save Ali's Section 1983 claim against Dr. Stanish from

being time-barred.[7]

Ali's Section 1983 claim against Dr. Stanish, therefore, is facially barred by

the statute of limitations.  Nevertheless, that is not the rationale for this court's

ultimate decision.  Rather, summary judgment will be granted in Defendants'

---

[7] The court need not address the application of the continuing violation doctrine to Wellpath, as it is clear that Ali failed to exhaust administrative remedies for his constitutional claim against that entity.

favor based on Ali's failure to exhaust administrative remedies, the dispositive issue in this case.

## IV.   CONCLUSION

Based on the foregoing, the court will grant summary judgment in Defendants' favor on all remaining Section 1983 claims because Ali failed to exhaust administrative remedies.  An appropriate Order follows.

Date: 5/8/24

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court